Filed 2/24/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re DARIAN R. et al, Persons Coming Under the Juvenile Court Law. | B314783 (Los Angeles County Super. Ct. No. 19CCJP04446) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MARIA V.,<br><br>Defendant and Appellant. | |

APPEAL from an order of the Superior Court of
Los Angeles County, Debra R. Archuleta, Judge.  Affirmed.

Elena S. Min, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Sally Son, Deputy County Counsel, for Plaintiff and Respondent.

_____

The Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.; ICWA), " 'is a federal law giving Indian tribes concurrent jurisdiction over state court child custody proceedings that involve Indian children living off of a reservation. [Citations.] Congress enacted ICWA to further the federal policy " 'that, where possible, an Indian child should remain in the Indian community . . . .' " [Citation.]' [Citation.]" (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 740 (*Benjamin M*).) Welfare and Institutions Code section 224.2 sets forth several requirements to effectuate the policies of ICWA.[1]

Maria V. (mother) appeals from an order terminating her parental rights over her three children, who all have the same father. The sole basis of her appeal is that the Los Angeles County Department of Children and Family Services (DCFS) failed to interview her extended family members about their Indian ancestry. DCFS agrees this was error, but contends the error was not prejudicial. We agree.

As detailed below, the record does not support mother's argument that readily obtainable information would have shed meaningful light on whether the children are Indian children.

_____

[1] Undesignated statutory citations are to the Welfare and Institutions Code.

2

There was a prior juvenile court finding that two of mother's children are not Indian children, the juvenile court asked mother, father, and paternal aunt about Indian ancestry, both parents eschewed Indian ancestry, and mother was living with extended family members whom she could have asked about potential Indian ancestry. We thus conclude under these circumstances, it was unlikely that any further inquiry of family members would have yielded information about Indian ancestry. Accordingly, DCFS's failure to ask extended family members about Indian ancestry was not prejudicial. We affirm the juvenile court's order terminating mother's parental rights.

## BACKGROUND

Mother and father have three children: Darian, Hailey, and Bonnie. From September 2015 to October 2016, the family participated in family maintenance services. It is undisputed that in the context of that prior dependency case, the juvenile court found that ICWA did not apply.

In the current dependency proceeding, mother and father admitted being addicted to methamphetamine, and using methamphetamine every day. Father acknowledged that he was unable to care for the children.[2] Father said he stayed away from the children when he was "out on the street" because he was "using drugs."

Mother minimally participated in the current dependency proceedings. She initially visited the children but then stopped. Mother did not attend her scheduled drug tests and frequently

---

[2] Father is not a party to this appeal. In October 2018, father was convicted for possession of paraphernalia concerning a controlled substance.

could not be located.  When social workers located mother in April 2020, she was living with maternal grandfather, and in July 2021, mother lived with maternal aunt.  During the dependency proceedings, mother was arrested for assault with a deadly weapon.

1.    *Petition*

In July 2019, DCFS filed a petition involving Darian (then 11), Hailey (then 8), and Bonnie (then 2).  As subsequently sustained, DCFS alleged mother has a history of drug use and currently abused methamphetamine, rendering her incapable of caring for her children.  DCFS further alleged mother had mental and emotional problems, including bipolar disorder, depression, anxiety, and self-mutilating behaviors, rendering her incapable of caring for the children.  With respect to father, the petition alleged that he had an 18-year history of drug use and currently used methamphetamine, rendering him incapable of caring for the children.  The petition alleged father had bipolar disorder and depression, rendering him incapable of caring for the children.

2.    *DCFS reports*

In its detention report, DCFS stated:  "The Indian Child Welfare Act does not apply.  Mother . . . denied that she or the children have American Indian ancestry."  Mother never retracted her denial that neither she nor the children have Indian ancestry.

DCFS interviewed father for the detention report, but the report does not indicate the social workers asked father about whether he had Indian ancestry.  The detention report indicated a social worker interviewed maternal aunt and had contact with maternal grandfather, but the detention report does not indicate

4

whether the social worker asked mother's relatives about any potential Indian ancestry.[3]

The jurisdiction report echoed the detention report stating, "The Indian Child Welfare Act does not apply.  Per the 7/16/19 Detention Report, mother . . . denied Indian Ancestry" when questioned by a social worker.

On January 22, 2020, a social worker interviewed father and father denied any Indian ancestry.

On July 2, 2020, a social worker interviewed paternal aunt. Paternal aunt denied any Indian ancestry.

In a status review report dated October 6, 2020, DCFS indicated:  "The Indian Child Welfare Act does not apply."  Both mother and father denied having Indian ancestry.

On June 1, 2021, DCFS again reported that ICWA did not apply.

### 3.    *Parental notification of no Indian ancestry*

On November 1, 2019, father filed parental notification of Indian status indicating, "I have no Indian ancestry as far as I know."

Mother filed her parental notification of Indian status on October 6, 2020.  Like father, mother checked a box stating, "I have no Indian ancestry as far as I know."

---

[3] The children initially were placed with maternal grandfather, but later were removed from his care because of referrals concerning him.  Hailey told her paternal aunt that maternal grandfather sexually abused her and that she had previously told mother about the abuse.  After an interim placement, the children were placed with their paternal aunt and uncle, who wanted to adopt the children.

### 4. *Juvenile court findings and orders*

At a hearing on September 3, 2019, the juvenile court concluded ICWA did not apply. The juvenile court relied in part on the undisputed fact that in a 2015 dependency case, the juvenile court found ICWA did not apply as to Darian and Hailey.

The juvenile court's November 1, 2019 minute order states: "The Court does not have a reason to know that this is an Indian Child, as defined under ICWA, and does not order notice to any tribe or the [Bureau of Indian Affairs]. Parents are to keep the Department, their Attorney and the Court aware of any new information relating to possible ICWA status."

On October 6, 2020, the juvenile court reiterated, "This does not appear to be a case governed by the Indian Child Welfare Act."

On August 6, 2021, the juvenile court terminated mother and father's parental rights. Neither was present at the hearing. Mother timely appealed from the order terminating her parental rights.

## DISCUSSION

### A. Applicable Law

"ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards that a state court, except in emergencies, must follow before removing an Indian child from his or her family." (*In re Austin J.* (2020) 47 Cal.App.5th 870, 881 (*Austin J.*).)

Federal law defines " 'Indian child' " as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian

6

tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); see also *In re A.B.* (2008) 164 Cal.App.4th 832, 838.) State law incorporates the same definition. (§ 224.1, subd. (a) & (b).) There is reason to believe a child is an Indian child if there is information that either child or the parent is a member or may be eligible for membership in an Indian tribe. (§ 224.2, subd. (e)(1).) There is reason to know a child is an Indian child if the child or the child's parent "possess an identification card indicating membership or citizenship in an Indian tribe." (§ 224.2, subd. (d)(6).) Notice to a tribe to determine if a child is an Indian child must include the names of the child's "direct lineal ancestors." (25 C.F.R. 23.111(d)(3).)

Under ICWA, the term "extended family member" is "defined by the law or custom of the Indian child's tribe or, in the absence of such law or custom, shall be a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin or stepparent." (25 U.S.C. 1903(2).)

At the outset of a dependency case, the child welfare agency and the juvenile court have a statutory initial duty to inquire into whether a child is, or may be an Indian child.[4] "The child welfare department's initial duty of inquiry includes 'asking the child, parents, legal guardian, Indian custodian, *extended family members*, others who have an interest in the child, and the party

---

[4] Federal law imposes an initial duty of inquiry into a child's Indian ancestry on the juvenile court. (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 741.) State law imposes that initial duty on the child welfare agency as well as the juvenile court. (*Ibid.*)

7

reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled.' (§ 224.2, subd. (b).)" (*Austin J.*, *supra*, 47 Cal.App.5th at p. 883, italics added.)

"The juvenile court must ask the participants in a dependency proceeding upon each party's first appearance 'whether the participant knows or has reason to know that the child is an Indian child' (§ 224.2, subd. (c)), and '[o]rder the parent . . . to complete Parental Notification of Indian Status ([Judicial Council] form ICWA-020).' [Citation]." (*Austin J.*, *supra*, 47 Cal.App.5th at p. 883.) Pursuant to title 25 of the Code of Federal Regulations part 23.107, "(a) State courts must ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child. The inquiry is made at the commencement of the proceeding and all responses should be on the record. State courts must instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child."[5]

"The minimum standards established by ICWA include the requirement of notice to Indian tribes in any involuntary proceeding in state court to place a child in foster care or to terminate parental rights 'where the court knows or has reason to know that an Indian child is involved.' [Citation.]" (*In re*

---

[5] Similarly, section 224.2, subdivision (c) provides: "At the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child. The court shall instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child."

*Isaiah W.* (2016) 1 Cal.5th 1, 8.)  Notice requirements help determine whether a child is an Indian child and ensure that a tribe is "aware of its right to intervene in or, where appropriate, exercise jurisdiction over a child custody proceeding involving an Indian child." (*Ibid.*)

## B. Mother Demonstrates that DCFS Erred in Failing to Interview Her Extended Family Members about Indian Ancestry

We first observe mother does not argue the *juvenile court* erred in failing to question her or father about potential Indian ancestry. We also note the social workers interviewed mother and father, and both denied any Indian ancestry. Thus, there is no asserted error as to initial ICWA inquiry as to father and mother.

Mother, however, does argue DCFS and the juvenile court failed to interview her extended family members—specifically maternal grandfather and maternal aunt—about the children's potential Indian ancestry. Mother also argues DCFS and the court should have interviewed paternal aunt about her Indian ancestry. Starting with the latter challenge, the record reveals that in fact, a social worker asked paternal aunt about her Indian ancestry, and paternal aunt denied having any. Mother's argument to the contrary is not well-founded.

To the extent mother argues the juvenile court (as opposed to DCFS) should have asked her extended family members or paternal aunt about Indian ancestry, the argument lacks merit because section 224.2, subdivision (b) requires only the child welfare agency to interview a child's extended family about Indian ancestry.

9

Mother, however, correctly contends DCFS had an obligation under section 224.2 subdivision (b) to interview maternal aunt and maternal grandfather, as extended family members, about Indian ancestry.  Its failure to do so was error.  DCFS does not argue otherwise, essentially conceding error.  The remaining question is whether that error was prejudicial.

## C.  Mother Fails to Demonstrate Prejudice from DCFS's Failure to Interview Mother's Extended Family Members

The parties rely on *Benjamin M.* for the definition of prejudice when considering DCFS's failure to interview extended family members about their Indian ancestry.  According to *Benjamin M.*, the failure to ask extended family members about Indian ancestry would be prejudicial if "the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.)  Continued inquiry is required "where the probability of obtaining meaningful information is reasonable in the context of ICWA." (*Ibid.*)  *Benjamin M.* reasoned that relying just on the parents for information about Indian ancestry does not take into account that the parents themselves may have scant information about their ancestry, and one does not always know "what information an initial inquiry, properly conducted might reveal." (*Id.* at pp. 742–743.)

In *Benjamin M*, the juvenile court conditionally reversed an order terminating a mother's parental rights; her children did not all have the same father.  On appeal, she contended the juvenile court erred in finding ICWA did not apply to one of her children because the child welfare agency did not interview the brother

of that child's father about potential Indian ancestry. (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 740.) The father never appeared in the proceeding. *Benjamin M.* reasoned: "Father's brother's knowledge of his own Indian status would be suggestive of Father's status. While we cannot know how Father's brother would answer the inquiry, his answer is likely to bear meaningfully on the determination at issue about his brother." (*Id.* at p. 745.)

Applying *Benjamin M.*'s definition of prejudice here, we conclude the record does not demonstrate that failing to ask maternal aunt and grandfather about the children's Indian ancestry was prejudicial. Mother does not contest that in 2015, the juvenile court found ICWA did not apply to Darian and Hailey. It is undisputed that Bonnie, Darian and Hailey have the same parents and thus, the same ancestry. This case substantially differs from *Benjamin M.* where the mother was challenging the social services agency's failure to interview a paternal relative whom the mother may not have known. Here, mother at various times lived with the relatives she claims DCFS failed to interview. In further contrast to *Benjamin M.*, it is undisputed that the juvenile court had already found in 2015 that ICWA did not apply to two of the children when all three children have the same parents.

In addition, since November 2019, mother has been under court order to continue providing information relevant to ICWA. Although mother cites *In re Y.W.* (2021) 70 Cal.App.5th 542, 554, for the proposition that a parent may not know about any relationship to a tribe, mother does not show the relevance of that proposition here. In *Y.W.*, mother was adopted at age two by unrelated adoptive parents from whom she was estranged, and

11

mother had no contact with her biologic parents.[6]  Here, mother lived with maternal grandfather and aunt during the dependency proceedings, and she was under court order to continue to provide information relevant to ICWA.  Unlike in *Y.W.*, there is no evidence in the record that mother was estranged from her extended family.  Mother also denied Indian ancestry, and did not dispute that in 2015, the juvenile court found ICWA did not apply to Bonnie's biologic siblings.  The record simply does not support mother's unvarnished contention that additional interviews of mother's father and sister would have meaningfully elucidated the children's Indian ancestry.

In sum, the record shows no prejudice flowing from DCFS's failure to interview maternal grandfather and maternal aunt.

## DISPOSITION

The order terminating mother's parental rights is affirmed. CERTIFIED FOR PUBLICATION.


BENDIX, J.

We concur:



ROTHSCHILD, P. J.                    CHANEY, J.

---

[6]  Also, the father in *Y.W.* had referenced his potential Cherokee heritage during his social worker interview.

12